540 So.2d 235 (1989)
Stuart HUNTER, Appellant,
v.
Susan B. HUNTER, Appellee.
No. 87-2095.
District Court of Appeal of Florida, Third District.
March 28, 1989.
*236 Ira L. Dubitsky, Miami, for appellant.
Maurice J. Kutner, Miami, for appellee.
Before HUBBART, BASKIN and JORGENSON, JJ.

ON MOTION FOR REHEARING
BASKIN, Judge.
We deny the motion for rehearing, but substitute the following for the opinion released January 31, 1989.
Stuart Hunter appeals from a judgment modifying a final judgment of dissolution of marriage. Stuart and Susan Hunter were married in 1976 and have two minor children born during the marriage.[1] In 1982, the parties executed a Marital Settlement Agreement which was incorporated into the 1983 Final Judgment of Dissolution of Marriage. The judgment ordered the parties to share parental responsibility of the minor children, as set forth in the incorporated agreement. The agreement named the wife the primary physical custodian of the children; gave the husband liberal visitation rights; required the husband to pay $400.00 per month child support; and declared the parties equally responsible for all medical and dental expenses not covered by insurance. Subsequent to the entry of the judgment, in response to a multitude of motions pertaining to visitation, custody, and child support, replete with accusations of child abuse by the mother and sexual abuse by the father, the trial court modified the parties' rights and obligations. In the proceedings under review, the husband sought primary physical custody of the children; the wife requested sole parental responsibility, payment of child-support arrearages and medical expenses, and permission to remove the children from Florida. After considering extensive testimony and written reports, the trial court entered the order under review. The court denied Mr. Hunter's request for physical custody of the children and reduction of child-support payments; temporarily terminated his visitation rights; ordered him to pay the children's *237 medical expenses; and granted Mrs. Hunter sole parental responsibility. Mr. Hunter appealed.
First, we address the trial court's denial of Mr. Hunter's petition for primary physical custody of the children and the grant of sole parental responsibility to Mrs. Hunter. "A party seeking modification of a child custody arrangement has the burden of proving (1) that there has been a substantial change in circumstances since the dissolution of the marriage, and (2) that a change of custody would be in the best interests of the children." Bragassa v. Bragassa, 505 So.2d 556, 557 (Fla. 3d DCA 1987); Wilson v. Wilson, 504 So.2d 1278 (Fla. 1st DCA 1986); Adams v. Adams, 385 So.2d 688, 689 (Fla. 3d DCA 1980). The court's discretion to modify custody is more limited than is its discretion in the initial determination and must be supported by substantial evidence. Adams, 385 So.2d at 688, and cases cited. Mr. Hunter's evidence failed to meet his burden of demonstrating that a change of custody was in the best interests of the children. We therefore conclude that the trial court did not abuse its discretion on this point.
In contrast, the record contains sufficient expert testimony supporting the trial court's ruling granting Mrs. Hunter sole parental responsibility as furthering the best interests of the children. Observing that although the parents were individually qualified "to serve as a parent," their animosity toward each other, their inability to communicate, and, most damaging, their use of the children to hurt each other created a negative effect on the children. Consequently, the trial court ruled that sole parental responsibility, obviating the need for joint decision-making, served the best interests of the children.
We find no basis for overturning the substance of the court's ruling; however, we note that the trial court erred in awarding sole parental responsibility to the mother absent a specific finding that "shared parental responsibility would be detrimental to the child[ren]." § 61.13(2)(b)2, Fla. Stat. (Supp. 1986); see Hicks v. Hicks, 511 So.2d 628 (Fla. 2d DCA 1987); Nichols v. Nichols, 432 So.2d 648 (Fla. 1st DCA 1983); see also Holland v. Holland, 458 So.2d 81 (Fla. 5th DCA 1984). We therefore reverse that portion of the final judgment granting Mrs. Hunter sole parental responsibility, and remand to enable the trial court to make the determination required by section 61.13(2)(b)2, Florida Statute (Supp. 1986).
Next, we address appellant's contention that the trial court erred in "terminating" his visitation rights.[2],[3] Visitation *238 rights may be modified if there is a substantial change in circumstances and the modification will benefit the child. Buckingham v. Buckingham, 492 So.2d 858 (Fla. 1st DCA 1986); Manuel v. Manuel, 489 So.2d 183 (Fla. 1st DCA 1986). Although termination of visitation rights is disfavored, § 61.13(2)(b)1, Fla. Stat. (Supp. 1986), the trial court has discretion to restrict or deny visitation when necessary to protect the welfare of the children. See French v. French, 452 So.2d 647 (Fla. 4th DCA 1984); Gavronsky v. Gavronsky, 403 So.2d 627 (Fla. 1st DCA 1981); Adams v. Adams, 376 So.2d 1204 (Fla. 3d DCA 1979), cert. denied, 388 So.2d 1109 (Fla. 1980); Hechler v. Hechler, 351 So.2d 1122 (Fla. 3d DCA 1977); Walborsky v. Walborsky, 258 So.2d 304 (Fla. 1st DCA), cert. denied, 263 So.2d 831 (Fla. 1972). Suspension of visitation for one year, see McMurtry v. McMurtry, 496 So.2d 893 (Fla. 2d DCA 1986), and consideration of psychological evaluations of the parties are within the court's discretion. See Balas v. Balas, 521 So.2d 343 (Fla. 2d DCA 1988); Creach v. Creach, 516 So.2d 1060 (Fla. 3d DCA 1987). The record before us demonstrates questionable behavior by the father toward the children, and justifies the trial court's exercise of discretion in finding that a material change in circumstances and the best interests of the children require a temporary suspension of visitation.
We find, however, that the order setting forth the conditions needed to reestablish visitation is unclear. First, the court's order is uncertain as to when Mr. Hunter may petition the court to reestablish visitation. The order permits a petition to be filed "[f]ollowing a minimum period of one year." This directive does not indicate when the period begins or whether the court will impose additional delays. Second, the order ambiguously states that Mr. Hunter "may avail himself of appropriate psychological or psychiatric counseling, as he and his counsel deem appropriate," but also states that the court will consider reestablishing visitation "after taking the testimony of the mental health expert who has treated the father... ." (Emphasis supplied.) Thus, it is difficult to ascertain whether Mr. Hunter must undergo psychological treatment. Furthermore, the order is unclear as to whether the court will appoint a mental health expert to evaluate Mr. Hunter. Finally, the court does not specify the type of mental health expert the court deems appropriate. These deficiencies mandate remand for clarification of the conditions under which appellant may regain visitation. See Wheeler v. Wheeler, 501 So.2d 729 (Fla. 1st DCA 1987); Beaman v. Beaman, 393 So.2d 19 (Fla. 3d DCA 1980).
Appellant also challenges the trial court's failure to order additional reductions in his child-support obligation and to make retroactive the order terminating his obligation to pay the children's medical expenses. We find no abuse of discretion. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Onley v. Onley, 540 So.2d 880 (Fla. 3d DCA 1989).
Finally, appellant claims error in the trial court's award of medical expenses. He asserts that the court erred in requiring him to pay the medical expenses without crediting him for paid insurance benefits. That assertion lacks merit: the judgment clearly states that Mr. Hunter must pay a sum representing "one-half (1/2) of the uninsured medical bills." (Emphasis supplied).
Appellant's remaining points concerning transfer of the case to the juvenile court and failure of the guardian ad litem to testify are without merit.
Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.
HUBBART and BASKIN, JJ., concur.
JORGENSON, Judge, concurring in part, dissenting in part.
I agree that the trial court properly denied the father's requests for a reduction in child support payments and a credit for insurance premium payments. I also agree that the trial court erred in awarding the *239 mother sole parental responsibility without making the requisite determination that shared parental responsibility would be detrimental to the children.
I do not agree that the trial court can make such a determination on remand without first appointing a guardian ad litem who will give the children of these warring parents the independent representation they so desperately need. Fla.R.P. & G.P. 5.120(a). "The role of a guardian ad litem is to act on an ex parte basis in defending the interests of the person he represents." Buncayo v. Dribin, 533 So.2d 935 (Fla. 3d DCA 1988) (emphasis supplied). For reasons not clear, the court-appointed guardian ad litem conducted no investigations on behalf of the children and was effectively absent throughout the trial. Although the trial court did receive testimony from guardians who had been appointed through the juvenile division guardian ad litem program in late 1985, neither guardian had been in contact with the family for approximately one year prior to trial. Parenthetically, both guardians testified that, at the time the juvenile proceedings were dropped and they left the case, they believed that the father would have made the more suitable primary residential parent. Although each parent was well represented throughout the four-day trial, there was no one to participate in the proceedings as an advocate for the children. On the facts of this particular case,[1] it was an abuse of discretion for the trial court to rule on matters of custody without the participation of an independent, unbiased, and currently knowledgeable guardian ad litem.
Finally, I do not agree that the trial court had jurisdiction to terminate the visitation rights of the father where the mother never requested such relief. This court's decision in Scheer v. Scheer, 132 So.2d 456 (Fla. 3d DCA 1961), is controlling on the point:
[W]e hold that when a parent or other person has by final decree been granted legal custody or visitation rights relating to the custody of children, the final decree should not be amended to take away such rights or any substantial change made therein except upon the usual and ordinary procedure of pleading including an allegation or statement of the basis of the claim for the change by the party seeking it and an opportunity to directly answer the same and raise issue thereon so that the parties may know that their evidence is being directed to or with reference to that issue, and in order that a record may be made for the benefit of a reviewing court if review should be sought.
Scheer, 132 So.2d at 458.
The dictum in Scheer, that an emergency situation may allow the trial court to grant relief outside the pleadings, is neither binding nor applicable here.[2]
I would affirm the economic portions of the trial court's order. I would reverse those portions modifying custody and terminating visitation and remand for the appointment of a guardian ad litem who will investigate the children's current situation and make appropriate recommendations available to the trial court.
NOTES
[1] Eric Hunter was born in 1978, and Janine Hunter was born in 1980.
[2] Mr. Hunter also argues that the court was without jurisdiction to terminate his visitation rights absent an appropriate pleading. In Scheer v. Scheer, 132 So.2d 456 (Fla. 3d DCA 1961), the court held that the trial court erred in permanently terminating visitation rights of a father seeking modification of custody absent the appropriate pleadings requesting this relief. However, the court stated: "[w]e do not wish to be understood as holding that in the event of an emergency the court cannot make such orders for temporary care, custody and for visitation as seem to be indicated... ." Scheer, 132 So.2d at 458. A review of the record clearly demonstrates that the relationship between the parties and its detrimental effect on the children justified the court's temporary relief. See Giacoio v. Giacoio, 286 So.2d 225 (Fla. 3d DCA 1973); Longo v. Longo, 245 So.2d 658 (Fla. 4th DCA 1971). In announcing his decision, the trial judge stated: "I am deeply concerned about the husband's continued conduct concerning the medication [of appellant's daughter]... . I've come to the inescapable conclusion from my point of view that the best interests of these children are such that they be given exclusively to the mother, that rights of visitation are terminated... ." Furthermore, appellant did not object to expert testimony concerning recommended visitation; appellant also acceded without objection to the judge's request that both parties submit visitation guidelines. He was afforded notice and the opportunity to present evidence on this issue.
[3] We acknowledge that the dictum in Scheer is not binding precedent, see e.g., State ex. rel. Biscayne Kennel Club v. Board of Business Regulation, 276 So.2d 823 (Fla. 1973); however, we maintain that the dictum in Scheer, allowing the court to afford relief in emergency situations, is applicable to this case. The dissent's citation to the final judgment does not support its contrary view. Infra at 239 n. 2. The trial judge's concluding comments clearly indicate that his perception of the exigency of the problem changed upon presentation of evidence supporting the termination of visitation: "[A]lthough candidly, when I started this case, I was not satisfied at all that Mr. was responsible for any molesting, and my mind has vacillated, ... but when I read it all and got through it all ... I've come to the inescapable conclusion from my point of view that the best interests of these children are such that they be given exclusively to the mother... ." (Emphasis supplied.)
[1] The questionable conduct by the father toward the daughter has already been alluded to by the majority. For her part, the mother has admitted administering corporal punishment to her son sufficient to raise bruises. It was alleged at trial, with some corroboration, that the mother also engaged in various forms of psychological abuse in an effort to induce her son to lie on her behalf and to thwart visitation of the children with their father. It is uncontroverted that, thanks to the unstinting efforts of both parents, their children continue to suffer. As one of the former guardians observed, "the real problem between these two people was who was going to get who last... ."
[2] In its final judgment on modification, the trial court found that

[s]ince the entry of the Final Judgment of Dissolution of Marriage on February 8, 1983, there has been a steady stream of post-judgment motions relating to the children, many of which were partially heard on an "emergency" basis, the balance of those matters being deferred pending the recent post-judgment final hearing. (Emphasis supplied.)