744 So.2d 1217 (1999)
Nancy Jo FLINT, Appellant,
v.
Craig FORTSON, Appellee.
No. 98-3009.
District Court of Appeal of Florida, Fourth District.
November 10, 1999.
*1218 Cynthia L. Greene of Law Offices of Cynthia L. Greene, P.A., Miami, and Pamela M. Dixon, Delray Beach, for appellant.
Steven R. Jacob of Law Offices of Steven R. Jacob, P.A., Boynton Beach, for appellee.
GROSS, J.
Nancy Jo Flint appeals a final judgment denying her request to relocate to Atlanta with the parties' children and reducing child support. We affirm the trial court's decision on the relocation issue and reverse that part of the final judgment reducing child support.
The parties were divorced in 1994. At that time, their minor daughters were ages 7 and 3. The final judgment of dissolution incorporated the parties' settlement agreement. Primary physical custody of the girls was with the wife; the husband was to have physical custody "between 8 and 12 days per month," and the parties agreed that the "[w]ife and children shall live no more than 70 minutes driving time by reliable surface transportation from the Husband's work place at Miami International Airport."
The settlement agreement also provided a financial incentive for the wife to complete law school. Rehabilitative alimony was set at $2,500 per month from September 1, 1994 through August, 1998, provided that the wife attended law school. If the wife did not attend law school, rehabilitative alimony was to be $1,250 per month.
Flint attended the University of Miami Law School, where she excelled. She was a member of the law review. She ranked in the top one percent of her class. At the beginning of her third year, Flint filed a petition to modify the final judgment of dissolution so that she could relocate with the children to Atlanta, where she had been offered an associate position with a law firm practicing in the area of the law in which she desired to specialize. In addition, the petition sought an increase in child support pursuant to the child support guidelines, consistent with appellee Craig Fortson's increased income and the children's escalating needs.
After a trial, the court denied Flint's request to relocate in a final judgment which discussed the six. factors set forth in section 61.13(2)(d), Florida Statutes (1997).
If Mize v. Mize, 621 So.2d 417 (Fla. 1993) and Russenberger v. Russenberger, 669 So.2d 1044 (Fla.1996),[1] controlled this case, there would have been a presumption in favor of allowing Flint's relocation, since she was the primary residential parent. However, the legislature's passage of section 61.13(2)(d) eliminated this presumption. See Flannery v. Crowe, 720 So.2d 308, 308 (Fla. 4th DCA 1998); Hardwick v. Hardwick, 710 So.2d 124, 125 (Fla. 4th DCA 1998). The effect of the statute is to remove from the relocation equation all bias in favor of the primary residential parent. The statute imposes an intensely fact specific framework on the relocation decision, where the trial judge may base a decision on what is best for the child, even though a result may not be best for the primary residential parent seeking to relocate. See § 61.13(2)(d), Fla. Stat. (1997).
Flint cites to a number of relocation cases which predate the enactment of section 61.13(2)(d). The standards of appellate review prevent us from reweighing the evidence and making the value judgments that are appropriate for the trial judge. Because there is substantial competent evidence to support the trial court's findings concerning the factors set forth in *1219 section 61.13(2)(d)1.-6., we must affirm the decision denying relocation. See Gerov v. Hotter, 731 So.2d 152, 154 (Fla. 4th DCA 1999); Flannery, 720 So.2d at 308; Borchard v. Borchard, 730 So.2d 748, 750 (Fla. 2d DCA 1999); Gray v. Martin, 730 So.2d 426, 427 (Fla. 5th DCA 1999). One view of the evidence is that relocation would so drastically curtail this father's active, ongoing participation in his daughters' lives that, in conjunction with other factors, the move was not in the best interest of the children.
Both at oral argument and in her brief, Flint forcefully attacked the procedure used by the trial court to prepare the final judgment. At the end of the trial, the judge asked that both parties submit proposed final judgments. The trial court signed the final judgment proposed by Fortson, making no changes to the first four and one half pages. The judge struck paragraphs 10 and 11 of the proposed judgment, concerning attorney's and expert fees, and hand wrote his rulings concerning those issues. Also, the judge did his own computations on the child support issues.
Relying on White v. White, 686 So.2d 762 (Fla. 5th DCA 1997) and Wattles v. Wattles, 631 So.2d 349 (Fla. 5th DCA 1994), Flint argues that the trial judge failed to fulfill his responsibility as a finder of fact by delegating his decision making authority to the attorneys, such that the final judgment was the "equivalent of a legal argument written by an attorney and signed by a circuit judge." According to Flint, this defect alone requires reversal.
In a perfect world, family division trial judges would always draft their own final judgments with the eloquence of Cardozo and the economy of Holmes. We firmly believe that the desired practice is for trial judges to draft their own orders or dictate them for the record.
However, in the real world of a busy family division in south Florida, judges typically spend full days on the bench facing one crisis after another. Many judges are required to address domestic violence cases in addition to issues falling under Chapter 61 and Chapter 742 (dealing with determination of parentage). A difficult task of a family judge is allocating court time between the competing litigants vying for the court's attention. Both the time standards of Florida Rule of Judicial Administration 2.085(d)(1)(C) and practical experience with family cases favor expeditious resolution of domestic relations issues; a final decision allows litigants to move on to the next stage of their lives. For many diligent family division judges, time spent in the courtroom consumes much of the time that might otherwise be spent in chambers crafting final judgments and orders.
Exacerbating these time pressures, Chapter 61 cases are fact intensive. The statute often requires many specific factual findings to be included in the final judgment. See Hardwick, 710 So.2d at 125. Even where specific findings are not mandatory, they are always desirable and "helpful to reviewing courts." Id.
Given this reality, we cannot foreclose the trial court's practice of requesting proposed final judgments from the parties. Such submissions can be useful to the trial judge in the decision making process by highlighting those specific factual disputes that require resolution. Even judges who draft their own final judgments find the parties' proposed orders to be useful. Between the time of a trial and the time a judgment is actually written, a judge may have heard a number of other cases presenting similar issues. A proposed judgment is a valuable mnemonic tool to ensure that the judgment includes those rulings on property division, alimony, and child custody that a case requires. By using the attorneys' submissions as a checklist, a judge can ensure that the final judgment is complete and avoid the necessity of motions for rehearing to correct omissions. Of course, another desirable practice, for those judges with the verbal facility to do *1220 so, is for "the trial court to indicate on the record its findings and conclusions." Waldman v. Waldman, 520 So.2d 87, 88 n. 4 (Fla. 3d DCA 1988).
In Ford Motor Co. v. Starling, 721 So.2d 335, 337 n. 4 (Fla. 5th DCA 1998), the fifth district recognized the limitation of its holdings in White and Wattles:
[The appellant] complains, justifiably, that the trial judge signed a proposed judgment prepared by the attorney for [the appellee]. There is a split of opinion on this court as to the propriety of this practice. In any event, we have reversed on this basis only when the signed judgment is inconsistent with an earlier pronouncement of the judge. That is not the case here. See generally White v. White, 686 So.2d 762 (Fla. 5th DCA 1997); Polizzi v. Polizzi, 600 So.2d 490 (Fla. 5th DCA 1992).
As the fifth district has recognized, what is critical for a reviewing court is that a final judgment reflect the trial judge's independent decision on the issues of a case, not that the judge used words drafted by one of the parties to express that decision.
The judgment in this case presents none of those indicia of an order that does not embody the actual decision of the court. The judgment does not diverge "from the court's oral findings and rulings." Viera v. Viera, 698 So.2d 1308, 1310 (Fla. 5th DCA 1997). The judgment was entered a week after the conclusion of the trial. There were no irregularities or conflicts between orders in the record. See Shapiro v. Shapiro, 670 So.2d 1177 (Fla. 4th DCA 1996). The judge participated in the trial by asking questions pertaining to the issues. The judge did not sign final judgments submitted by each party. The trial judge made handwritten changes in the proposed judgment and his own findings of fact concerning the child support issues. For these reasons, White and Wattles do not compel reversal.
We agree with Flint that the trial judge improperly reduced child support. Fortson did not seek a downward modification in his pleadings. The transcript is devoid of any request for a downward modification. Fortson's proposed final judgment did not seek a downward modification. It appears that the judge made this ruling on his own, after applying the child support guidelines to his findings on the income of the parties. The issue of a downward modification was not properly before the court. See Wynn v. Wynn, 727 So.2d 282, 283 (Fla. 2d DCA 1999); Sohacki v. Sohacki, 657 So.2d 41, 42 (Fla. 1st DCA 1995). Therefore, we reverse that portion of the final judgment modifying the child support and remand to the trial court with directions to reinstate the child support ordered in the 1994 final judgment.
Affirmed in part, reversed in part, and remanded.
DELL and STONE, JJ., concur.
NOTES
[1] As discussed below, the presumption applied in Mize v. Mize, 621 So.2d 417 (Fla. 1993) and Russenberger v. Russenberger, 669 So.2d 1044 (Fla.1996), was superseded by section 61.13(2)(d), Florida Statutes (1997).