GRIFFIN, J.
This appeal stems from a dissolution action that ended Ulla Cartwright [“wife”] and Jeffrey Cartwright’s [“husband”] twenty-nine year marriage. In 1992, the parties entered into a settlement agreement incorporated into the final judgment of dissolution whereby husband was ordered to pay permanent alimony of $2,285.83 per month. Wife worked little during the marriage and suffers from rheumatoid arthritis. There was also a provision that husband would increase his alimony payment by twenty percent of any salary increase he received each year. At the time of the dissolution in 1992, husband was earning $80,500.
Six years later, in October 1998, husband filed a supplemental petition to modify the final judgment of' dissolution, requesting a decrease in alimony payments, alleging a substantial change in circumstances based on an increase in his living expenses.
The case went to trial in February 2000. At trial, husband claimed that his financial condition had slowly deteriorated since 1992. At the time of the settlement agreement, he lived in Binghamton, New York, where he intended to stay until his retirement. He worked for a defense contractor, but lost his job in late 1994. The only suitable position he found was in Washington, D.C. Husband had remarried in 1992. He and his wife settled in Rockville, Maryland. He claims that because he relocated, his cost of living dramatically rose. Also, in 1995, the interest rate on his mortgage and the cost of utilities increased. In 1993, husband was diagnosed with high blood pressure and had to undergo various tests as well as take prescription medicine. He was also misdiagnosed with a tumor in his adrenal gland and was again misdiagnosed in 1996 as having a nodule in his thyroid which involved a series of tests and multiple visits to the hospital for needle biopsies. He claims medical expenses of $200 per month — roughly the amount he spends on cigarettes.
*256 Husband also complained of additional commuting expenses. When he lived in New York, he lived a few miles from work, but, in Maryland, he lived thirty-three miles from work. Also, auto insurance and car repair costs increased. The adjustable rate on the mortgage on his home increased. He had to pay higher taxes. His new wife was unable to find a full-time position in Maryland as a teacher, so husband had to charge expenses on his credit card. In late 1997, husband suffered a infected retina in his right eye and underwent preventative laser eye surgery in his left eye. He had three eye surgeries in his right eye which caused him to miss enough work that his company replaced him.
In January 1998, husband took a position in Boston, Massachusetts and claims the cost of living tripled that of Bingham-ton. He bought a VA repossessed house seventy miles from his job that required many repairs. His credit card and loan debt continued to rise. Husband then began unilaterally decreasing his alimony payments to wife and was held in contempt for this failure to pay.
By the time of the trial, husband was working as a computer systems manager at a software consulting firm. His gross salary had increased from $80,500, at the time of the dissolution, to $103,000. At the close of the hearing, the court did not announce a ruling, but did ask for an affidavit outlining wife’s attorney’s fees.
Approximately one month after the hearing on husband’s petition for modification, on March 2, 2000, Judge George Maxwell executed an order entitled “Supplemental Final Judgment.” This order set forth that husband failed to prove a substantial change in circumstances and his petition for modification was denied. The order also set forth a schedule for payment of the arrearage and retained jurisdiction to enter an award of attorney’s fees. This order was filed on March 6, 2000. On March 22, 2000, husband filed in circuit court his notice of appeal of this order. On the following day, he filed (also in circuit court) a notice withdrawing the appeal. Meanwhile, the circuit court sent the notice of appeal to this court and we executed an acknowledgment of new case assigning it our file number 5D00-950. Then, out of the blue, on April 11, Judge Maxwell entered a new and completely different final order on the modification petition. This order found that there was a substantial change of circumstances and reduced the alimony payable to wife by $324.15 per month. The court also set aside the alimony increase provision in the marital settlement agreement as “inequitable” and denied wife attorney’s fees.
Meanwhile, in Case No. 00-950, because no final judgment had been attached to the notice of appeal, as required, this court contacted the circuit court by telephone on April 13, 2000, and was informed that no March 2 order existed. Accordingly, this court sent out an order requiring husband to show cause why the appeal should not be dismissed for lack of jurisdiction.
One day later, on April 14, the trial court held a hearing to explain why it entered a second final judgment:
I went to a judicial conference out of state. I was in school for a week. I came back. We had a bomb threat. We lost a day because of that. I had ... three or four hundred items to sign. I had my law clerk ... working on what I had determined to be my decision in this case, to provide a judgment. In error, I signed another judgment which came before me unsolicited ... It got into my signing stack, where it should not have been.
Wife’s attorney questioned the trial court’s jurisdiction to render a second judgment while the district court had jurisdiction *257 over the appeal of the first order. The trial court, however, decided that since husband’s attorney had filed a notice to withdraw his appeal, the trial court had jurisdiction. The judge said:
I think [dismissing the appeal makes a difference]. I am researching it, but I wanted to put this on the record so I could make it clear to an appellate court, if it winds up there, that it was never my intent to sign the order that [wife’s attorney] submitted.... It was my intent to sign the order that I worked on with my law clerk ... which is in accordance with my ruling and my notes, such as they were, from this case. Now if you have dismissed the appeal, I believe I have jurisdiction to just administratively vacate the order that I signed in error and enter the order which I signed correctly.
Having now prevailed in a case he had heretofore apparently lost, appealed and dismissed the appeal, for good measure, husband filed a second notice of withdrawal of the appeal on April 17. This time he filed it in the court of appeal as required by Florida Rule of Appellate Procedure 9.350. Having no idea of what was transpiring below, this court recognized the appellant’s dismissal notice and dismissed the appeal on April 18.
On April 20, wife filed a motion for a new trial contending, inter alia, that the court did not have jurisdiction to enter the second final judgment. Wife also filed a motion to disqualify the trial judge. Judge Maxwell recused himself on June 30, 2000. On October 13, 2000, the new judge assigned to the case denied wife’s motion for new trial. He took judicial notice of this court’s records and evidently accepted husband’s argument that we had concluded that we lacked jurisdiction. Since we lacked jurisdiction, the circuit court must have had jurisdiction and the court had the power to enter the second final judgment.
Wife then filed a notice of appeal of the new judgment on November 13, 2000 and now contends that the trial court did not possess jurisdiction to enter a second final judgment; that the trial court erred in finding a substantial change in circumstances permitting a reduction in husband’s alimony obligation; and that the trial court erred in setting aside the settlement agreement and denying wife’s attorney’s fees.
Rather than spend pages and pages attempting to unravel this procedural morass to determine whether the court had the power to enter the second final judgment, we conclude it does not matter. Through no fault of the parties, it is impossible to have confidence in either order, and whichever order were to be declared the procedural survivor of this debacle, the losing party would rightfully doubt the fairness or accuracy of the proceedings. Considerations of due process, therefore, require that we vacate the current judgment and remand this case to the trial court for a new hearing by a different judge and entry of a new final judgment. Cf. Polizzi v. Polizzi, 600 So.2d 490 (Fla. 5th DCA 1992).
We do not suggest that a trial court is at peril of reversal when it recognizes and endeavors to correct a mistake in a judgment — or even several errors. What we are presented with in this case is something very different. The entry of a final judgment is a solemn judicial responsibility that demands attention and thoughtfulness. The judge’s own explanation of how he made this mistake suggests that these efforts were lacking. This case illustrates why judges of this court and other courts discourage or would disallow entirely the use of judgments drafted by either party. See Kelly v. Kelly, 790 So.2d 1185 (Fla. 2d *258 DCA 2001); Peterson v. Brown, 787 So.2d 979 (Fla. 5th DCA 2001); Corporate Management Advisors, Inc. v. Boghos, 756 So.2d 246 (Fla. 5th DCA 2000); Flint v. Fortson, 744 So.2d 1217 (Fla. 4th DCA 1999).
JUDGMENT VACATED and REMANDED.
PETERSON and PALMER, JJ., concur.