835 So.2d 1168 (2002)
Norma DAMIANI, Appellant,
v.
Rommel DAMIANI, Appellee.
No. 4D01-4793.
District Court of Appeal of Florida, Fourth District.
November 20, 2002.
Rehearing Denied February 24, 2003.
Isabel Julia-Miles of Isabel Julia-Miles, P.A., and Lisa Marie Macci of Lisa Marie Macci, P.A., Boca Raton, for appellant.
*1169 Steven M. Pesso of Steven M. Pesso, P.A., and Jeanne C. Brady of Brady & Brady, Boca Raton, for appellee.
POLEN, C.J.
Norma Damiani appeals a final judgment of dissolution. During the marriage, the couple had one child. Just before the couple filed for divorce, the mother took the child into Mexico and kept him away from the father. The mother repeatedly disobeyed court orders demanding that she produce the child. Eventually, after seeking the help of various law enforcement agencies, the husband located the mother and child in Mexico and the parties entered in to a temporary agreement. Although the record contains conflicting evidence, at the time of this litigation, the father maintained full time employment with Granger Industrial Supply and the mother was earning a substantially smaller income waiting tables. The final judgment that was entered by the trial court was the proposed final judgment submitted by the husband without change. The final judgment provided, inter alia, that the father would be the primary residential parent and that the mother's visitation was conditioned upon her posting a $100,000 bond.
On appeal, the wife raises six arguments. We find error with the trial court's verbatim adoption of the husband's proposed judgment and with the trial court's order conditioning the wife's visitation upon her ability to post a $100,000 bond. We find the wife's other arguments raised on appeal unpersuasive. We hereby reverse the trial court's judgment in those two respects and grant the wife's motion for appellate attorney's fees.
The first issue that we address is the court's decision to condition the mother's visitation upon the posting of a $100,000 bond. The denial or restriction of visitation rights is generally disfavored. However, we recognize that it is within the court's discretion to restrict or limit visitation as may be necessary to protect the welfare of the child. Allen v. Allen, 787 So.2d 215 (Fla. 5th DCA 2001)(citing Yandell v. Yandell, 39 So.2d 554 (Fla.1949)). Thus, we would not disturb the trial court's decision absent a finding of abuse of discretion. See Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla. 1980). Based on the facts of this case, especially the evidence of the mother's income, we find that the trial court did abuse its discretion in requiring the mother to pay a $100,000 bond.
The Florida Supreme Court overruled a lower court's decision to deny a parent any visitation rights and stated "[T]he privilege of visiting the minor children of the parties to a divorce proceeding should never be denied either parent so long as he or she conducts himself or herself, while in the presence of such children, in a manner which will not adversely affect the morals or welfare of such progeny." Yandell, 39 So.2d at 555. In this case, according to the written order, the court did not take away the mother's ability to visit the child altogether. However, based on the mother's financial inability to meet the requirement of a $100,000 bond, we find the order will very likely preclude any visitation.
The posting of a bond as a condition precedent to visitation is not a unique requirement. In a somewhat similar scenario, such a bond was upheld by the first district. Scharmen v. Scharmen, 613 So.2d 121 (Fla. 1st DCA 1993). In Scharmen, the court did not disturb a lower courts requirement of a father to post a $2500 bond in order to have visitation after he had "absconded to Georgia with the children," Id. at 122. The opinion does not address the reasonableness of the amount of the bond, nor does it address the ability of the father to pay the bond amount. *1170 However, it is clear that the likelihood of visitation, when a bond is required, coincides with the parent's ability to make the requisite bond payment. For that reason, the reasonableness of a bond such as this must be considered on a case by case basis.
In this case, the trial court noted that the requirement of the bond was premised on the idea that should the mother decide to take the child into Mexico, the bond would finance the husband's search for the child. The record clearly demonstrated that Mr. Damiani spent great sums of money searching for his child. However, nothing in the record suggests that it is in the best interest of this child to have no contact with the mother. In fact, the court recognized that it was in the child's best interest to have visitation with the mother. We find it unreasonable to suggest that the mother, based on her alleged income, would ever be able to raise the money necessary to meet this bond requirement. As a result, the imposition of this bond, on this mother, has effectively eliminated her visitation altogether.
We recognize the difficult position the trial court is in and we are not blind to the fact that the record indicates the mother's willingness to disobey court orders. However, we find that the imposition of a $100,000 bond in this situation was an abuse of discretion as it will likely preclude the mother from having any visitation with the child and the court recognized that visitation is in the child's best interest. As a result, we hereby reverse that portion of the final judgment requiring a bond and remand this issue to the trial court with instructions to find a visitation schedule, with such additional reasonable restrictions on the mother, that will support the best interest of the child.
The next issue that we address is the court's verbatim adoption of the husband's proposed order. Five months after the trial, the court decided to adopt a proposed order submitted by the husband. The submitted order was adopted verbatim. We agree with the wife that the verbatim adoption of this proposed order was an error and we hereby remand this case back to the trial court to enter an order that accurately reflects the proceedings reflected in the record.
This court has previously addressed the issue of a trial court adopting a proposed judgment. Flint v. Fortson, 744 So.2d 1217 (Fla. 4th DCA 1999). In Flint, this court acknowledged the desirability of judges preparing their own orders, but recognized the practical justification for judges utilizing submissions from counsel. The Flint opinion noted that "what is critical for a reviewing court is that a final judgment reflect the trial judge's independent decision on the issues of the case." Id. at 1220. The court concluded that although there is a split of opinion on the issue, reversal has only been granted when the signed judgment is inconsistent with prior pronouncements of the judge. Id.
Although this case is distinguishable from Flint in regards to the amount of time between the trial and rendition of the judgment, there is no bright line time frame that renders an adoption of a judgment per se error. The court's opinion in Flint makes clear that the court considered several factors. In addition to the timing, the court considered whether the judgment diverted from the findings on record, whether there were any irregularities or conflicts, whether the judge participated in the trial, and whether the judge made any alterations to the judgment. Id. at 1217.
In this case, we find that the judgment bears evidence that it does not accurately reflect the findings of the court. First, as mentioned above, the judgment was not entered until five months after the trial. *1171 We do not hold that a five month delay is per se grounds for reversal, but it is merely one factor that is considered. In addition to the delay, we find that the existence of several inconsistencies between the final order and the transcript mandates that the trial judge reconsider this issue.
In sum, as this court has previously held in Flint, a reversal on this issue is warranted only when the judgment is inconsistent with the prior pronouncements of the judge. Flint, supra. This case exemplifies that exact situation and thus we hereby reverse the final order of dissolution and remand this case back to the trial court to act in accord with this opinion.
Last, we address the wife's motion for appellate attorney fees. The wife has filed a motion seeking appellate attorney's fees pursuant to sections 57.105 and 61.16, Florida Statutes, contending that she has great need for, and husband has financial ability to pay for, appellate attorney's fees. Section 61.16 provides in part that "when determining whether to make attorney's fees and costs awards at the appellate level, the court shall primarily consider the relative financial resources of the parties."
This court has previously held that "[W]hen we grant a motion for appellate attorney's fees founded on section 61.16, we have no way of knowing how great is the need to equalize the access to legal services, nor how great is the ability to pay. In one case the need may be modest but the ability unlimited; while in another the need may be great but the ability modest; in still another the need and ability are similar; and in yet another there may be little or no need or ability. All of these permutations are for the finder of fact, the trial court, to sort out." Gerhardt v. Gerhardt, 738 So.2d 485 (Fla. 4th DCA 1999).
This court's inability to accurately determine the wife's need for fees, as well as the husband's ability to pay, is further complicated in this case due to contradictory or incomplete portions of the record regarding the financial positions of the parties. As a result, based on the apparent discrepancy between the financial positions of the parties, we hereby grant the motion and recognize that a prima facie basis for a fee award exists under section 61.16, Florida Statutes, but that the final award is subject to a determination of need and ability to pay by the trial court and in accord with the factors outlined in Rosen. Rosen v. Rosen, 696 So.2d 697 (Fla.1997).
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
GUNTHER and MAY, JJ., concur.