867 So.2d 567 (2004)
Jeffrey ROSS, Appellant,
v.
Hayley Lisa BOTHA, Appellee.
No. 4D02-500.
District Court of Appeal of Florida, Fourth District.
March 3, 2004.
*569 Doreen Inkeles of Doreen Inkeles, P.A., Coral Springs, for appellant.
John L. Avery, Jr. of Law Offices of John L. Avery, Jr., Jupiter, for appellee.

ON MOTION FOR REHEARING
BAILEY, JENNIFER D., Associate Judge.
We withdraw our previously issued opinion and substitute the following in its place.
This appeal arises from a post-dissolution order regarding child support and visitation issues between Hayley Botha ("mother") and Jeffrey Ross ("father"). During the parties' nine year marriage, they had one daughter. When they were divorced in Illinois in 1999, they entered into a marital settlement agreement. The agreement provided, inter alia, that the mother have sole custody of the child and the father have liberal specified visitation, pay $125 per week in child support, and secure $100,000 in life insurance. The agreement also contained a fee-shifting "prevailing party" provision.
After both parties relocated to Florida, the mother filed a petition to domesticate the Illinois judgment and to enforce $17,000 in child support arrearages, medical expense contributions, and to force the father to provide medical and life insurance. The father counter-petitioned for a reduction in his child support obligation. An agreed judgment was rendered in this phase of the case, awarding the mother $16,899 in back child support payable at $25 per week, reducing the father's current support obligation to $75 per week, and requiring him to obtain life and medical insurance. Both parties also were, by agreement, to encourage the child to attend therapy with a mutually-selected therapist and to refrain from alienating the child from the other parent.
Within a few months, the father filed a pro se motion for contempt alleging that *570 the mother had denied visitation, unilaterally selected a therapist without giving the father any opportunity to participate, and engaged in alienating and denigrating conduct in front of the child. The mother counter-petitioned for modification, alleging threats from the father to take the child, that the father emotionally abused the child by calling her names and screaming obscenities, and that he failed to pay child support or obtain life insurance. She requested that the court hold the father in contempt, imprison him, suspend or limit visitation, and require supervision of any visitation.
All matters were set before the circuit judge. The mother was represented by an attorney and the father appeared pro se. There is no record of the hearing. The father subsequently retained counsel who attempted to create a stipulated record pursuant to the appellate rules, but was unable to do so. See Fla. R.App. P. 9.200(a)(2) and (b)(4). It appears the court did not announce its rulings in the presence of the parties at the hearing. Rather, at the conclusion of the hearing, the court simply asked the mother's attorney to prepare an order without specifying its contents. The attorney simultaneously mailed his proposed order to the court and the father, and the court signed it the same day the husband received it, adopting the order verbatim as its own. It is from this order the father appeals.
The order contains several errors that, as a matter of law, require reversal, even without a transcript. See Guardianship of Halpert v. Rosenbloom, 698 So.2d 938, 939 (Fla. 4th DCA 1997); Whelan v. Whelan, 736 So.2d 732, 733 (Fla. 4th DCA 1999). The father challenges the court's contempt and attorney's fees holdings, the child support issues, and the manner in which the order was generated.
On the contempt issue, the order held the father in contempt for failing to pay child support and set the amount of arrears as $818.09. The father was ordered to pay this amount within ten days or face incarceration. The order's failure to satisfy the basic requirements for a finding of contempt is clear. A child support contempt order must find: 1) a prior valid order of support; 2) a failure to pay all or part of the ordered support; 3) the parent's present ability to pay the support; and 4) the parent's willful refusal to comply with the prior court order. See Fla. Fam. L.R.P. 12.615(d)(1); see also Bowen v. Bowen, 471 So.2d 1274, 1278-79 (Fla. 1985). Further, "[t]he order shall contain a recital of the facts on which these findings are based." Fla. Fam. L.R.P. 12.615(d)(1).
Neither the legal findings nor the facts are reflected in the order under consideration. Additionally, the trial court erred in mandating the father's automatic incarceration upon his failure to pay the arrears. Where jail is determined as the sanction for civil contempt, before the contemnor can be incarcerated the trial court must afford the contemnor an opportunity to establish the inability to pay. If the trial court orders the contemnor's incarceration, a separate affirmative finding that the parent has the present ability to pay the purge is required, and the court must recite the facts in support of that finding. See Fla. Fam. L.R.P. 12.615(e); see also Bowen, 471 So.2d at 1279-80; Hipschman v. Cochran, 683 So.2d 209, 212 (Fla. 4th DCA 1996) (en banc).
As to the father's requirement to maintain $100,000 of life insurance, the record does not reflect, and the court made no findings, that such insurance was available at a reasonable cost to the father or that he had the resources to pay for such insurance. See Guerin v. DiRoma, *571 819 So.2d 968, 969 (Fla. 4th DCA 2002). Likewise, the order granting attorney's fees is defective as it failed to specify the fees related to the contempt action, which fees are subject to the prevailing party provision in the marital settlement agreement, and what fees are related to the modification of custody and visitation which are not covered by the agreement. See Mott v. Mott, 800 So.2d 331, 333 (Fla. 2d DCA 2001); Tucker v. Greenberg, 674 So.2d 807, 809-10 (Fla. 5th DCA 1996). The order also failed to determine the parties' respective financial resources to support an attorney's fees award. See § 61.16, Fla. Stat. (2001). These omissions on both the contempt and attorney's fees rulings require reversal.
As to the issues relating to the father's visitation and contact with the child, the order includes findings that the father demonstrated a pattern of abusive behavior towards the child, that he failed to cooperate with the child's therapist, and that he directs deep hostility toward the wife. Thus, the order suspended the husband's visitation until such time as he could demonstrate to the court that it is in the child's best interests to resume visitation, for a period of "one year from the date of the order" and that "after that time, the Court, upon proper motion, shall conduct a hearing."
In entering this order the court erred. First, this order modified the existing judgment. A modification order requires findings 1) that a material change in circumstances has arisen since the entry of the prior visitation order, and 2) that the welfare of the child will be promoted by the modification. See Haas v. Haas, 686 So.2d 799, 800 (Fla. 4th DCA 1997). No such findings are made in this order. Secondly, the order sets conflicting time frames for reconsideration of the father's visitation, requiring an arbitrary one year waiting period and/or such time as the father can demonstrate to the court that it is in the child's best interests to resume this visitation. May the father move for visitation within a year by virtue of the alternative provision? Is this a temporary order or a final order which would require the father to meet the modification standard to see his child again? Finally, and most importantly, the order fails to set forth any specific requirements or standards for the father to meet in order to see his child again. See Hunter v. Hunter, 540 So.2d 235, 238 (Fla. 3d DCA 1989). Does the court envision therapy for the father, anger management, or a foreseeable reduction in conflict between the parents? The order is completely silent as to what steps the court expects the father to take, how therapy will be accessed in light of the father's unemployment and the limited finances of the parties, and what proof of parental rehabilitation the court is seeking from the father. The lack of any specific guidelines also prevents any successor judge from monitoring the father's progress. The lack of a clear mandate to the father is especially troubling since the trial court did not announce any such ruling from the bench. For these reasons we reverse the court's order suspending the father's visitation.
The father also appeals those portions of the order that rely upon the testimony of the child's therapist. Here, the alleged error relates to the evidence, which error we cannot review without a transcript. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla. 1979). As the order is being reversed, we decline to address this issue.
The final issue before us is the manner in which the order was generated. The trial judge did not announce any findings or rulings at the conclusion of the hearing. The order under review was prepared *572 solely by the mother's attorney and forwarded to the judge at the same time it was sent to the father. Upon receiving the order the judge signed it without providing the father an opportunity to object or comment on it. While appellate courts throughout the state have acknowledged the burden on our family courts and the necessity of directing parties to submit proposed orders, the procedure followed in this case as well as the numerous errors in the order require reversal of the order as they are per se reversible. See Perlow v. Berg-Perlow, 816 So.2d 210, 217 (Fla. 4th DCA 2002). A court should never direct only one side to prepare an order without assuring that the opposing party has had the opportunity to comment or object to its contents, or prepare its own submission. It is also difficult to believe, on such fact-intensive issues as presented here, that an attorney can be so omniscient as to the court's findings that they could be entirely correct without a single edit where the court made no rulings in open court. See Corp. Mgmt. Advisors, Inc. v. Boghos, 756 So.2d 246, 248 (Fla. 5th DCA 2000) (admonishing trial judges for adopting proposed orders drafted by litigants, verbatim, without making in-court findings).
This practice is particularly troublesome where the issues and high conflict nature of this case are unfortunately typical of post-judgment family litigation. Frequently, there is no court reporter or record. Receipt of a proposed order from any party without it being first provided to, and reviewed, by the opposing party is problematic and may, depending on the circumstances, amount to an ex-parte communication with the court. When opposing party is pro se, the problems escalate, creating the perception that the lawyer is deciding the case instead of the judge.
The demands of a crowded family docket force judges to rely on lawyers and parties to submit orders for their review. See Flint v. Fortson, 744 So.2d 1217, 1219 (Fla. 4th DCA 1999). Unfortunately, proposed orders prepared by one side are frequently one-sided as to findings and rulings. As pro se litigants are bound by the rules of procedure just like any lawyer, they also possess the same right to submit proposed orders, review orders submitted to the court by opposing counsel, and comment on same, within a reasonable time frame. Several factors to consider when reviewing "adopted" orders, include:
1) Is the signed order consistent with or divergent from the verbal rulings of the court?
2) How much time has passed since the hearing, and does the judge remember the case?
3) Are there irregularities or conflicts in the terms of the order?
4) Did the judge participate in the trial?
5) Did the judge edit or alter the proposed judgment to conform it to his or her conclusions about the case, or did he or she sign it verbatim?
See Damiani v. Damiani, 835 So.2d 1168, 1170 (Fla. 4th DCA 2002) (citing Flint, 744 So.2d at 1220).
These issues are particularly apparent/evident in this case as there is no record, and the trial court did not render any verbal rulings to be subsequently memorialized in a written order. Therefore, we are unable to render meaningful review as to the order's inconsistency with the court's verbal rulings or the judge's participation. The court ended the hearing with no findings and no rulings, and then adopted an irregular, defective, one-sided submission verbatim, without comment from the opposing side. An order must reflect independent decision-making by the *573 judge. See Perlow, 816 So.2d at 217; Flint, 744 So.2d at 1220. Because this order does not meet that standard, we reverse. Given the reality of current caseloads, it is unrealistic to advocate that judges should always author their own orders. However, particularly in cases involving pro se litigants such as this, the opportunity for both sides to have input as to the content of the order as well as careful scrutiny that the proposed order includes the necessary findings and language and reflects the independent conclusions of the court, are essential to perceptions of fairness and fundamental justice.
As to the issue of appellate attorney's fees, the mother's motion is denied. We grant the father's motion, and remand the matter for the trial court to determine the amount of fees based upon the mother's ability to pay and the father's need. See Rosen v. Rosen, 696 So.2d 697, 700 (Fla. 1997); Damiani, 835 So.2d at 1171.
Reversed and remanded.
KLEIN and STEVENSON, JJ., concur.