# Supreme Court of Florida

––––––––––

No. SC20-505

––––––––––

**C.N.,**
Petitioner,

vs.

**I.G.C.,**
Respondent.

April 29, 2021

MUÑIZ, J.

The issue in this certified conflict case is whether a final judgment that modifies a preexisting parenting plan must give a parent "concrete steps" to restore lost time-sharing and return to the premodification status quo. We hold that there is no such requirement.

## I.

### A.

A "parenting plan" is statutorily defined as "a document created to govern the relationship between the parents relating to

decisions that must be made regarding the minor child." § 61.046(14), Fla. Stat. (2020). "In creating the plan, all circumstances between the parents, including their historic relationship, domestic violence, and other factors must be taken into consideration." *Id.*

A court's authority to "approve, grant, or modify a parenting plan" is conferred by section 61.13(2)(a), Florida Statutes (2020). Section 61.13(2)(b) sets out minimum required contents for all parenting plans, including "time-sharing schedule arrangements that specify the time that the minor child will spend with each parent."

Chapter 61, Florida Statutes (2020), mandates that "the best interest of the child shall be the primary consideration" in crafting a parenting plan. § 61.13(3), Fla. Stat. Accordingly, while a court may approve a parenting plan developed and agreed to by the parents, the court retains the discretion not to approve such a plan and instead to develop its own plan. § 61.046(14)(a), Fla. Stat.

Section 61.13(3) gives a nonexhaustive set of factors that a court must consider in discerning the child's best interests. A catch-all provision allows the court to consider "[a]ny other factor

that is relevant to the determination of a specific parenting plan, including the time-sharing schedule." § 61.13(3)(t), Fla Stat. Ultimately, the "[d]etermination of the best interests of the child shall be made by evaluating all of the factors affecting the welfare and interests of the particular minor child and the circumstances of that family." § 61.13(3), Fla. Stat.

A court has the authority to modify a previously ordered parenting plan. *Id.* But a modification is not permitted "without a showing of a substantial, material, and unanticipated change in circumstances and a determination that the modification is in the best interests of the child." *Id.*

### B.

The parties in this case, who were never married to each other, are the parents of a minor child born in 2012. In 2014, they entered into a paternity agreement and parenting plan, and a court incorporated the plan in a final judgment.[1] Under that plan, the mother had primary residential custody and the majority of time-

---

1. Section 742.031(1), Florida Statutes (2020), authorizes a court, in conjunction with a determination of paternity, to "make a determination of an appropriate parenting plan, including a time-sharing schedule, in accordance with chapter 61."

sharing. The plan gave the mother approximately 57% of overnights and the father 43%.

In 2016 and early 2017, the mother began to accuse the father of physically harming the child. The father disputed the mother's allegations, acrimony ensued, and eventually the parents took each other to court. Relevant here, the father filed a petition to modify the parties' original parenting plan.

The court went on to hold a two-day trial in August 2018. Informed by medical and expert testimony and the results of a state agency investigation, the court concluded that the mother's child abuse allegations against the father were false. The court also concluded that the mother was suffering from mental health issues and that "her unsupported and unfounded fears regarding the Father and the child's daycare caused her to act in a manner detrimental to the minor child and rendered her unable to effectively co-parent and support the child's relationship with the Father."

The court ultimately made the statutorily required findings and entered a final judgment modifying the parties' parenting plan. Specifically, the court entered a new time-sharing schedule that

gave the father two-thirds of overnights and the mother one-third. The court also ordered the mother to begin "intensive mental health therapy." The court observed that "[n]o definitive time period was projected by the experts but credible and convincing evidence supports that successful therapy will likely take a significant time and perhaps years."

The mother appealed to the Fifth District Court of Appeal. The court of appeal took up two claims: (1) that the lower court's findings were insufficient to support a modification; and (2) that the order was "legally flawed" because it "lacks any 'concrete steps' or benchmarks that Mother could work toward to regain her lost timesharing, does not specify 'what proof' the court would need from Mother, and does not say when Mother may petition the court to reestablish her timesharing rights." *C.N. v. I.G.C.*, 291 So. 3d 204, 207 (Fla. 5th DCA 2020). The Fifth District rejected both claims and affirmed the lower court's judgment. *Id.* at 207-08.

Relevant here, the Fifth District held that "the trial court's order is not rendered legally insufficient for failing to provide Mother with specific steps to regain timesharing." *Id.* at 208. In so holding, the district court certified conflict with other district court

cases that "stand for the proposition that final judgments modifying timesharing must include the specific steps necessary to reestablish timesharing." *Id.* at 207 (certifying conflict with *Ross v. Botha*, 867 So. 2d 567 (Fla. 4th DCA 2004), *T.D. v. K.F.*, 283 So. 3d 943 (Fla. 2d DCA 2019), and *Solomon v. Solomon*, 251 So. 3d 244 (Fla. 3d DCA 2018)).[2]

The mother petitioned for our review, and we accepted jurisdiction.

## II.

We agree with the Fifth District that a final judgment modifying a preexisting parenting plan is not legally deficient simply for failing to give specific steps to restore lost timesharing. Having said that, we note that the Fifth District went further and held that section 61.13(3), Florida Statutes, does not authorize trial courts to

---

2. After oral argument in this case, the Second District receded from its prior decisions where that court had "held the omission of [concrete steps] provisions from parenting orders or judgments to be legal error." *Mallick v. Mallick*, No. 2D19-1183, 2020 WL 6106287, at *6 (Fla. 2d DCA Oct. 16, 2020).

include such steps in a final judgment modifying a parenting plan.[3] Our decision today does not address the correctness of this latter holding.

## A.

The mother maintains that a court commits reversible error if its final judgment modifying timesharing does not "provide concrete steps to allow a parent to restore her lost timesharing rights, particularly when a parent is ordered to undergo therapy." We disagree.

Our first observation is that the mother's position finds no support in the text of chapter 61, which, as we have explained, governs parenting plans. It is undisputed that chapter 61 does not expressly impose a concrete steps requirement. And we do not agree with the mother's argument that certain statutory provisions fairly imply such a requirement.

---

3. On this point, the Fifth District aligned itself with the First District's decision in *Dukes v. Griffin*, 230 So. 3d 155 (Fla. 1st DCA 2017). The Second District in *Mallick* certified conflict with the First and Fifth Districts over whether chapter 61 authorizes (as opposed to requires) concrete steps provisions in final judgments that modify parenting plans. *Mallick*, 2020 WL 6106287, at *6.

Looking for textual support, the mother notes that chapter 61 makes the "best interests of the child" a broad and flexible concept and that trial courts retain continuing jurisdiction to enforce timesharing plans. Pet'r's Br. 9. (citing §§ 61.13(5), 61.515, Fla. Stat.). But read most generously to the mother's position, these provisions would at most support the argument that a trial court has *discretion* to build concrete steps into a final judgment modifying a parenting plan. The provisions do not implicitly *require* the court to provide concrete steps.

Indeed, the mother's core argument in this case is not about the statutory text itself, but about supposed background principles underlying the text. The mother urges that chapter 61 must be understood in light of the common law. And she says that "[t]he longstanding consensus of the courts of appeal is consistent with the statute in requiring that a modification order include concrete steps for regaining time, at least where it mandates therapy or some other affirmative act." The mother suggests that the Legislature has acquiesced in and assumed the validity of this "consensus" by amending chapter 61 without repudiating the district courts' common law rule.

The mother is right that the common law can, and sometimes must, inform the proper understanding of a statutory text. *See Gonzales v. City of Belle Glade*, 287 So. 2d 669, 670 (Fla. 1973) ("This Court has consistently held that statutes should be read in light of the common law."). Nonetheless, we are unpersuaded by the mother's arguments in favor of a concrete steps requirement here.

The supposed common law rule invoked by the mother appears to have originated in the decision of the Third District Court of Appeal in *Hunter v. Hunter*, 540 So. 2d 235 (Fla. 3d DCA 1989). That case involved a trial court order that *temporarily* terminated a parent's visitation rights. *Id.* at 236. The district court faulted the order for being unclear about when the parent could petition for restoration of those rights and about the contours of any therapy requirement. *Id.* at 238. As a remedy, the district court remanded the order "for clarification of the conditions under which [the parent] may regain visitation." *Id.*

In the ensuing decades, some district court decisions have built on *Hunter* and used it to justify requiring "concrete steps" even in orders that finally settled the parties' visitation rights. *See e.g.*

*Munoz v. Munoz*, 210 So. 3d 227 (Fla. 2d DCA 2017); *Tzynder v. Edelsburg*, 184 So. 3d 583 (Fla. 3d DCA 2016); *Witt-Bahls v. Bahls*, 193 So. 3d 35 (Fla. 4th DCA 2016).  But this expansion of *Hunter* appears to have occurred without evident consideration of the difference between temporary restrictions and finally ordered time-sharing schedules, and without any analysis of the relationship between the common law and chapter 61.  As best we can tell, none of the cases expanding *Hunter* reconcile a concrete steps requirement for final modifications with the statutory text.  Moreover, this Court has never addressed, much less endorsed, the common law rule that the mother sees in the district court case law.

Regardless of the merits of *Hunter* and regardless of the existence of district court decisions extending that case, the mother's argument suffers from a fundamental defect.  To the extent a common law rule is inconsistent with the statutory text, the statute takes precedence.  *Townsend v. R.J. Reynolds Tobacco Co.,* 192 So. 3d 1223, 1231 (Fla. 2016) ("Under Florida law, a statute supersedes a common law rule when it is so repugnant to

the common law rule that the two cannot coexist.").  And we believe that the concrete steps requirement advocated by the mother is incompatible with the text of chapter 61.

Requiring the court to give concrete steps would essentially entitle a parent to be restored to the premodification status quo, albeit after satisfying court-identified conditions.  Such an entitlement is inconsistent with section 61.13(2)(c)1., which says that "[t]here is no presumption . . . for or against any specific time-sharing schedule when creating or modifying the parenting plan of the child."  It is also inconsistent with section 61.13(2)(c)2.b., which says that the "court shall order sole parental responsibility for a minor child to one parent, with or without time-sharing with the other parent if it is in the best interests of the minor child."

And perhaps most basically, it is inconsistent with the statute's overarching "best interests of the child" standard itself. Depending on the circumstances, it might not be reasonable for a court to attempt to devise conditions that would lead to a restoration of the premodification status quo.  Yet the rule advocated by the mother would require the court to specify a pathway to restoration in every case.

In light of these aspects of chapter 61, a court does not err simply for finally modifying a preexisting parenting plan without giving a parent concrete steps to restore any lost time-sharing.

B.

In the decision below, the Fifth District found an additional inconsistency between the mother's asserted "concrete steps" requirement and the statutory text. The court of appeal reasoned that to give such steps would constitute an end run around section 61.13(3), Florida Statutes. Again, that provision says that a parenting plan may not be modified unless there has been a "substantial, material, and unanticipated change in circumstances." § 61.13(3), Fla. Stat. According to the Fifth District, "[c]ourts may not circumvent that standard by setting forth extra-statutory contingencies for modification." *C.N.*, 291 So. 3d at 207. The First District Court of Appeal has similarly reasoned that modifications are governed by the statutory framework and that a parent is not "owed a list of alternative steps, created ad hoc by the

- 12 -

trial court, to facilitate her quest to reestablish majority time-sharing." *Dukes v. Griffin*, 230 So. 3d 155, 157 (Fla. 1st DCA 2017).

A great deal of the parties' briefing addresses this aspect of the Fifth District's decision. The father adopts and builds on the Fifth District's reasoning. The mother disagrees, arguing that the First and Fifth Districts have overlooked "the critical distinction" between a "modification under the statute and a contingency anticipated and built into" a parenting plan. The mother essentially maintains that the First and Fifth Districts' reasoning is based on a faulty premise.

Specifically, the mother says that a built-in contingency is not an "unanticipated" change in circumstances (as required by the text of section 61.13(3)) and is therefore not a "modification" at all. The mother likens an order that anticipates time-sharing changes after a parent's successful completion of therapy to an order that anticipates time-sharing changes after a child starts kindergarten or high school. She warns that, taken to its logical conclusion, the First and Fifth Districts' reasoning on the modification question risks invalidating time-sharing variations that are commonly included in time-sharing plans.

- 13 -

Each of the parties purports to have found a precedent of this Court that supports its position on whether to view the specification of concrete steps as a "modification" governed by section 61.13(3), Florida Statutes. The father points to *Arthur v. Arthur*, 54 So. 3d 454 (Fla. 2010). In that case, we held that a trial court had erred by approving a parent's request to relocate a child on a date twenty months after the final hearing.[4] We reasoned that the court had impermissibly employed a "prospective-based analysis" in determining the best interests of the child. *Id.* at 459.

The mother points to *Wade v. Hirschman*, 903 So. 2d 928 (Fla. 2005). There, interpreting a since-amended version of chapter 61, we clarified the standard for a trial court to apply in ruling on a petition to modify a custody order. The mother interprets our decision in *Wade* as having acknowledged a court's discretion to

---

4. Petitions to relocate a child are governed by section 61.13001, Florida Statutes (2020).

anticipate contingencies and account for them in a parenting plan on the front end.[5]

In our view, this is not the case in which to resolve the parties' dispute about how to determine what constitutes a "modification" of a parenting plan for purposes of chapter 61, or whether the statutory modification process implies limits on anticipating contingencies in a parenting plan. Were we to take up these issues now, we would be speculating about hypothetical final judgments and whether their hypothetical contents are permitted under chapter 61. We think it better to address these questions in a case involving a challenge to an actual order, where our answers to the

---

5. In particular, the mother relies on the following footnote from *Wade*:

> The substantial change test applies *unless* the judgment otherwise provides for the standard that should be applied when one party seeks a modification. *See, e.g., Mooney v. Mooney*, 729 So.2d 1015, 1016 (Fla. 1st DCA 1999) (parents agreed that beginning of school would constitute a change in circumstances which would require custody to be readdressed); *Greene v. Suhor*, 783 So.2d 290, 290–91 (Fla. 5th DCA 2001) (custody order provided that either parent could seek reconsideration of the custody issue when the child started school without showing a change in circumstances).

*Wade*, 903 So. 2d at 932 n. 9.

questions would matter to the outcome. Here, as we have explained, the mother's arguments in favor of a concrete steps requirement fail for reasons independent of the modification question.

## C.

The mother makes the fallback argument that the order requiring her to undergo therapy is impermissibly vague, and she asks that we vacate the final judgment on that basis. She says that the final judgment leaves her "trapped in indefinite and intensive therapy with no clue as to what steps she must take to get out."

We decline to address this claim, because it was not ruled on in the Fifth District's decision and because it is outside the scope of the certified conflict. As we read the order imposing the new time-sharing plan, the therapy requirement is not directed to restoring the mother to the premodification status quo. Rather, the order describes the mother's therapy as one of several "protective measures" designed to further the success of the parties' new parenting plan. And in any event, we note the father's position—both in his brief and at oral argument—that the mother already has

complied with the final judgment's only firm requirement as to therapy and that the mother's time-sharing is not contingent on her participating in therapy.

III.

We approve the decision of the Fifth District to the extent it is consistent with this opinion.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, COURIEL, and GROSSHANS, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions/Certified Direct Conflict of Decisions

Fifth District - Case No. 5D19-473

(Orange County)

Ana María Cristina Pérez Soto, Miami, Florida, Eric C. Tung, Los Angeles, California, and C. Kevin Marshall, Jones Day, Washington, District of Columbia; and Alexandra Drobnick of Domestic Violence Legal Empowerment and Appeals Project, Washington, District of Columbia,

for Petitioner

Wade P. Luther of The Law Office of Wade P. Luther, P.A., Orlando, Florida,

for Respondent